## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| MATT PASQUINELLI and BRYAN PAYSEN, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>HUMBL, LLC, BRIAN FOOTE, JEFFREY HINSHAW, GEORGE SHARP, KAREN GARCIA, and MICHELE RIVERA,<br><br>        Defendants. | Case No.: 1:23-cv-00743-JLH |

## OPENING BRIEF IN SUPPORT OF DEFENDANT GEORGE SHARP'S MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT PURSUANT TO FEDERAL RULE <u>OF CIVIL PROCEDURE 12(b)(6)</u>

Of Counsel:

Gregory G. Brown
(*admitted pro hac vice*)
Mark M. Higuchi
(*admitted pro hac vice*)
BROWN & CHARBONNEAU, LLP
420 Exchange, Ste. 270
Irvine, CA 92602
Telephone: (714) 505-3000
Facsimile: (714) 505-3070
Email: octriallaw@gmail.com
        mhiguchi@bc-llp.com

Dated: May 15, 2025

Carl D. Neff (No. 4895)
Maura L. Burke (No. 5313)
PIERSON FERDINAND LLP
112 S. French Street
Wilmington, DE 19801
Telephone: (302) 482-4244
Email: carl.neff@pierferd.com
        maura.burke@pierferd.com

*Attorneys for Defendant,*
*George Sharp*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

I.   INTRODUCTION ............................................................................. 1

II.  FACTUAL ALLEGATIONS ............................................................. 2

III. LAW AND ARGUMENT .................................................................. 7

  A. Legal Standard ............................................................................ 7

  B. Pleading Requirements for Securities Fraud Claims ..................... 7

  C. The SAC Fails to State a Claim under Section 10(b) and Rule10(b)-5
     of the Exchange Act against Defendant Sharp ............................ 10

    1. The SAC Does Not Identify Any Material Misrepresentation or
       Omission by Defendant Sharp ................................................. 11

    2. The SAC Does not Adequately Plead Scienter as to Defendant Sharp ..... 15

    3. The SAC Does not Adequately Plead Plaintiffs' Reliance on Any
       Alleged Misrepresentations Attributed to Defendant Sharp ...................... 17

  D. The SAC Fails to State a Claim under Section 20(a) of the Exchange Act
     Against Defendant Sharp .............................................................. 18

  E. The SAC Fails to State a Claim for Violations of Sections 5 and 12(a)(1)
     of the Securities Act Against Defendant Sharp ............................. 20

IV.  CONCLUSION ................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**                                                                **Page**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................8

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988).............................................................................. 11, 13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544  (2007)....................................................................................8

*Carefirst of Md., Inc. v. Care First Transp., Inc.*,
    2002 U.S. Dist. LEXIS 22830 (D. Del. Nov. 1, 2002)..................................8

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
    70 F.4th 668 (3d Cir. 2023) ......................................................................11

*Collins v. Signetics Corp.*,
    605 F.2d 110 (3d Cir. 1979) ......................................................................20

*Craftmatic Sec. Litig. v. Kraftsow*,
    890 F.2d 628 (3d Cir. 1989) ......................................................................21

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336, 125 S. Ct. 1627 (2005) ........................................................11

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011)..................................................................................17

*Garfield v. Shutterfly, Inc.*,
    857 F. App'x 71 (3d Cir. 2021) ........................................................... 10, 14

*In re Aetna Sec. Litig.*,
    617 F.3d 272 (3d Cir. 2010) ......................................................................16

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410  (3d Cir. 1997) ........................................................13

*In re DVI, Inc. Sec. Litig.*,
    639 F.3d 623 (3d Cir. 2011) .........................................................15

*In re Hertz Glob. Holdings, Inc.*,
    905 F.3d 106 (3d Cir. 2018) .........................................................15

*In re Mylan N.V. Sec. Litig.*,
    No. 2:20-cv-955-NR, 2023 U.S. Dist. LEXIS 88941
    (W.D. Pa. May 18, 2023)...............................................................11

*In re Westinghouse Sec. Litig.*,
    90 F.3d 696 (3d Cir. 1996) ...........................................................21

*Mann v. Brenner*,
    375 F. App'x 232 (3d Cir. 2010).....................................................7

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)................................................................. 13, 17

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000) .........................................................13

*Pinter v. Dahl*,
    *486* U.S. 622, 100 L. Ed. 2d 658, 108 S. Ct. 2063 (1988) ...........................21

*Semerenko v. Cendant Corp.*,
    223 F.3d 165 (3d Cir. 2000) .........................................................17

*Sheehan v. Little Switz.*,
    136 F. Supp. 2d 301 (D. Del. 2001) .............................................18

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*,
    552 U.S. 148, 128 S. Ct. 761 (2008) ....................................... 14, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)............................................................ 9, 10, 15

*Transperfect Holdings, LLC v. Pincus*,
    No. 22-1477-RGA, 2023 U.S. Dist. LEXIS 161106
    (D. Del. Sep. 12, 2023) ................................................................16

*Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*,
    176 F. Supp. 3d 387 (D. Del. 2016) ..............................................8

*Winer Family Tr. v. Queen*,
    503 F.3d 319 (3d Cir. 2007) .........................................................13


**<u>Statutes</u>**

15 U.S.C. § 78 ................................................................... *passim*

15 U.S.C.S. § 77l(a)(1) ...................................................................20

FRCP 12(b)(6)..........................................................................1, 7

FRCP 9(b) ................................................................................1, 8


**<u>Secondary Source</u>**

Private Securities Litigation Reform Act.............................................*passim*

Securities Act of 1933...........................................................................*passim*

Securities Act of 1937...........................................................................*passim*

## I.    <u>INTRODUCTION</u>

Defendant George Sharp ("Sharp" or "Defendant Sharp") hereby moves to dismiss the Second Amended Class Action Complaint ("SAC"), and all Causes of Action therein, of Plaintiffs Matt Pasquinelli and Bryan Payson, individually and on behalf of all others similarly situated (collectively "Plaintiffs"). The SAC fails to adequately plead its claims against Defendant Sharp.

The SAC's First, Second, and Third Causes of Action for violations of the Exchange Act are not plead with the requisite particularity as to Defendant Sharp. On September 22, 2022, Plaintiffs filed their First Amended Class Action Complaint ("FAC") stating identical causes of action against Defendant Sharp. This Court dismissed the FAC on March 27, 2025, for a failure to meet Federal Rules of Civil Procedure 12(b)(6) pleading requirements. In this SAC, Plaintiffs repackage their formerly defective FAC and identify the same alleged conduct and statements in their causes of action against Defendant Sharp. Plaintiffs' SAC lacks detailed allegations of any material misrepresentations or omissions by Defendant Sharp; allegations showing that Defendant Sharp is a "controlling person" of Defendant HUMBL, LLC ("HUMBL"); and allegations showing Plaintiffs' direct reliance on Defendant Sharp's alleged conduct. Pursuant to the Private Securities Litigation Reform Act ("PSLRA"), and FRCP 9(b), Plaintiffs' claims are subject to heightened pleading requirements–which have not been satisfied here.

1

Further, the Fourth Cause of Action for violation of Section 12(a) of the Securities Act also fails. The SAC does not allege that Defendant Sharp was an "immediate seller" of the securities at issue, nor are there sufficient allegations to state a claim based on "solicitation". Accordingly, Defendant Sharp respectfully requests that this Court grant the instant motion in its entirety and dismiss the SAC as against Defendant Sharp.

## II.    **FACTUAL ALLEGATIONS**

The SAC generally alleges a "scheme" by HUMBL and the Individual Defendants to artificially inflate HUMBL stock prices through a series of misrepresentations related to the stock's value, product development, partnerships and mergers, etc. However, as against Defendant Sharp, the allegations within the SAC are very limited. Below are all the allegations in the SAC that identify any alleged conduct of Defendant Sharp (footnotes omitted):

> 38.    The merger between Tesoro and HUMBL was facilitated by Defendant Sharp – a known player in the OTCMKT with a history of brokering reverse mergers and a penchant for thoroughbred horses (including one named "Front-Run the Fed").

> 39.    In this instance, Sharp connected Defendant Foote with Tesoro's near-death CEO Henry Boucher ("Boucher") and orchestrated a lightening-speed merger that instantly turned a worthless company into one worth billions of dollars—despite having no products on the market.

> 42.    The Company simultaneously announced that Foote was installed as President, Hinshaw as Secretary, Michelle Rivera as a director and Vice President, Global Partnerships, and Karen Garcia as Vice

President, Major Accounts. Sharp remained on as an advisor to HUMBL, while also working with HUMBL in his capacity as President of Forwardly.

48. On November 23, 2020, Forwardly, LLC—controlled by Sharp—invested an undisclosed amount in Tesoro in exchange for warrants to purchase 500 million common shares within two years of the HUMBL/Tesoro merger. In a December 10, 2020 press release issued by Forwardly, Sharp stated that the investment in HUMBL was immediately beneficial due, in part, to "the fortuitous timing of the execution of the purchase agreement."

145. Defendant Sharp—who routinely promoted himself as an "advocate for shareholder rights and honesty in the OTC"—used his well-branded identity to It pump Tesoro's share price just before the merger completed. In one tweet, Sharp wrote: "I didn't really realize what a big deal $TSNP & HUMBL CEO, Brian Foote, is until this weekend. I believe that he may be the Elon Musk of blockchain. He is so highly regarded that he is a keynote speaker at BC conventions around the world." At the 12.9.20 Investor Call, Sharp said: "I'm not easily impressed, but I was blown apart. This deal is going to bring credibility finally to the OTC."

146. In addition to pumping the share price, Sharp deliberately withheld material information from shareholders to delay adverse reactions from the public. During the 2.26.21 investor call, Sharp said: "I made the conscious decision that we were not going to tell you, and I'll tell you why: it would have created mass panic…I don't want to sound like I'm your mother, but we saved a lot of you from yourselves here." [9:55]

147. In saying this, Sharp acknowledged that telegraphing the split would have had an adverse effect on the share price. Between the time Sharp knew that a split would occur (November 12, 2020) and the date of the actual split (February 26, 2021), HUMBL shares skyrocketed over 367%, from $0.014 to $5.15.

148. Then when the public learned that HUMBL had quietly issued Series B Preferred shares convertible into 5.54B common shares to insiders and family members—thereby setting shareholders up for total

annihilation once those shares unlocked and became available to sell—Sharp repeatedly gaslit investors. On February 26, 2021, Sharp said: "If you're worried about dilution, don't be. This is not your typical OTC stock. We believe these people are investors, not profit takers."

149.   Again, on April 18, 2021, Sharp tweeted: "if you think that 6 billion new $HMBL shares are going to suddenly appear in the O/S, then please…sell your shares." Sharp's tweet was classic gaslighting, given that 3 billion shares could suddenly appear for sale in December if insiders converted their Series B into common shares.

150.   Sharp's portrayal of HUMBL as full of diehard believers who would never sell their shares was an important part of the scheme to keep investors engaged in the Company despite its utter failure to bring a successful product to market. Foote carried this mission out flawlessly.

189.   Sharp or his family benefited from the sale of Forwardly's common shares (previously converted from Series B). For example, the Company reported that Forwardly planned to sell 125,000,000 shares in its July 20, 2022 S-1 filing.

197.   The reverse merger closed on December 3, 2020. The reverse merger was shepherded by OTC investor Defendant George Sharp, who described himself during HUMBL's debut webcast as "an advocate for shareholder rights and honesty in the OTC."

203.   Thereafter Defendant Sharp attempted to downplay the concern shareholders expressed about the corporate action and assuage those who were concerned about potential dilution, stating: "If you're worried about dilution, don't be." Sharp also told investors that he was doing them a favor by being opaque about the Company's actions, such as the surprise reverse stock split, stating, "I have made the conscious decision that we were not going to tell you..."

204.   The price of HUMBL stock declined following the announcement of the reverse split, but the downplaying of the potential dilution by the Company and Defendant Sharp, coupled with a continued string of announcements about HUMBL's international partnerships and growth

prospects, kept the stock price artificially inflated for the rest of the Class Period.

312.   Then, after markets closed on February 26, 2021, HUMBL held its third investor conference call. During that 2.26.21 Investor Call, Defendant Sharp assured investors that: "If you're worried about dilution, don't be."

339.   The Individual Defendants had actual knowledge of HUMBL's strategy for the reverse merger with Tesoro and structuring of the different classes of shares at the time they were occurring. Their own public statements indicated their personal involvement and knowledge:

> 12.9.20: "The HUMBL team and the Tesoro public vehicle were a perfect match, and **we laid out a plan to bring the two together and everybody followed the plan to a tee which is a credit to Brian [Foote]** and his group. (Sharp)

> 12.9.20: "It goes without saying that **George [Sharp] was incredible at getting us into the OTC markets**. …We knew it takes an average of five to seven years to get onto the NASDAQ and we saw tech starting to run through the same five venture capital firms, same five mega techs, same five investment backs in New York, and I said 'Okay, well, what can we do here to do something really fresh and not only for the brand … but also do something from a capital markets prospective that was super disruptive and got back to the basic so early stage technology being available for anybody to invest in.' We appreciate that opportunity. Thank you George." (Foote)

> 2.26.21: "A lot of people that would have taken over the TSNP vehicle would have done a 1 for 10,000, a 1 for 100,000, wiping out the existing shareholders. We did a very small reverse split …***We picked the number one for four as our personally said*** because we wanted to appease the shareholders." (Sharp)

340.   Defendant Sharp's own statements further demonstrated his knowledge of what HUMBL shareholders consider material and indeed, his admission that he withheld information in order to manage the Company's stock price. Specifically, during the 2.26.21 Call with

investors, Defendant Sharp stated: We received a number of comments about how some certain people would have wished that we had announced that we were doing to do this reverse split sooner. In other words, we should have told you a week ago or two weeks ago. ***I made the conscious decision that we were not going to tell you***. I'll tell you why. It would've created mass panic. Some of you would've sold your stock, which is fine, but the problem is, with a mass panic, instead of selling your stock at a dollar, 90 cents, 80 cents, 70 cents, you probably would've ended up selling, a lot of you, selling it for 40 cents. I don't want to sound like I'm your mother, but we saved a lot of you from yourselves here.

342.   Lastly, the Individual Defendants closely followed HUMBL's stock price, *see, e.g.,* 2.26.21 Investor Call (Sharp: "[Y]ou in fact had a tremendous increase in the value of your stock today ... We closed at 85 cents yesterday, and opened at $3.40."), and relied on the value of its stock in order to conduct acquisitions, *see, e.g.,* 7.7.21 Press Release (Foote's "retired shares are sufficient to cover the shares that have been or will be issued in connection with the completed Tickeri and Monster LA acquisitions, HUMBL Brand Ambassadors, HUMBL Strategic Advisors and HUMBL Strategic Collaborations such as Athletes First, Glushon Sports Management and Pilgrimage Festival"). Accordingly, the Individual Defendants had to have been aware of the increase in the stock price each time a new deal was announced. *See, e.g., supra* at ¶¶ 46, 58, 61, 108, 113, 126-27, 133, 135, 139, 147. As a result, they knew or recklessly disregarded that information about any deal falling through or failing – information which they had access to – was material to investors and thus concealed that information from investors in order to artificially maintain or inflate the Company's stock price. During the Class Period, the Individual Defendants were only able to manipulate HUMBL's stock price because the market for its stock efficiently and effectively responded to their public statements about the Company.

365.   During the Class Period, Defendants Foote, Sharp, and Hinshaw participated in the operation and management of HUMBL and conducted and participated, directly and indirectly, in the conduct of HUMBL's business affairs. Because of their senior positions, the Individual Defendants knew the adverse non-public information about HUMBL's current financial position and future business prospects.

369.  By reason of the above conduct, Defendants Foote, Sharp, and Hinshaw are liable pursuant to §20(a) of the Exchange Act for the violations committed by HUMBL.

In sum, the SAC alleges that Sharp: introduced Defendant Foote to the CEO of Tesoro (SAC ¶¶ 38-39), remained on as an "advisor" of HUMBL after its merger with Tesoro (SAC ¶ 42), invested indirectly in Tesoro through an entity he controlled within two (2) years of the aforementioned merger (SAC ¶ 48), issued a "Tweet" praising Defendant Foote (SAC ¶ 145), disclosed to shareholders that he intentionally did not tell them about the "reverse split" to avoid creating a panic (SAC ¶¶ 146-47, 203, 340), and told investors not to worry about dilution of their shares, and if they were worried, to sell their shares (SAC ¶¶ 148, 312). The remainder of the allegations in the SAC either relate to conduct of other individuals or are alleged against the "Defendants" generally. Notably, these allegations are identical to those in Plaintiffs' FAC which the Court has already dismissed for failing to meet the pleading requirements under 12(b)(6).

## III.  <u>LAW AND ARGUMENT</u>

### A.    **Legal Standard**

"A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and therefore may be decided on its face without extensive factual development." *Mann v. Brenner*, 375 F. App'x 232, 239 (3d Cir. 2010). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

The Court generally must assume the truth of the allegations in the Complaint, however, "conclusory allegations of law, unsupported conclusions and unwarranted inferences" should not be accepted as true. *Carefirst of Md., Inc. v. Care First Transp., Inc.*, 2002 U.S. Dist. LEXIS 22830, at *7 (D. Del. Nov. 1, 2002). Thus, "conclusory allegations unsupported by any factual assertions, made in plaintiffs' complaint cannot withstand a motion to dismiss." *Id*.
at *7-*8.

### B.    Pleading Requirements for Securities Fraud Claims

A Complaint alleging a violation of section 10(b) and Rule-10b(5) of the Exchange Act must satisfy the pleading requirements of both the PSLRA and FRCP 9(b). *See Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 393 (D. Del. 2016). The PSLRA provides that:

> In any private action arising under this title [15 USCS §§ 78a et seq.]
> in which the plaintiff alleges that the defendant—

8

> (A) made an untrue statement of a material fact; or
>
> (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1). Further:

> [I]n any private action arising under this title [15 USCS §§ 78a et seq.] in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this title [15 USCS §§ 78a et seq.], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2).

"The PSLRA requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention 'to deceive, manipulate, or defraud.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

> ***It does not suffice that a reasonable factfinder plausibly could infer from the complaint's allegations the requisite state of mind.*** Rather, to determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court governed by § 21D(b)(2) must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff, as the Seventh Circuit did, but also competing inferences rationally drawn from the facts alleged. An inference of fraudulent intent may be plausible, yet less cogent than

9

other, nonculpable explanations for the defendant's conduct. ***To qualify as "strong" within the intendment of § 21D(b)(2), we hold, an inference of scienter must be more than merely plausible or reasonable–it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent***.

*Id*. at 314 (emphasis added).

In alleging fraud, "Rule 9(b) requires a plaintiff to plead (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his [or her] damage." *Garfield v. Shutterfly, Inc*., 857 F. App'x 71, 80 (3d Cir. 2021). Indeed, the "PSLRA requires Plaintiff to specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id*. at 81. This requires a pleading of "the who, what, when, where, and how" of the misconduct charged. *Id*. at 80.

### C.    The SAC Fails to State a Claim under Section 10(b) and Rule10(b)-5 of the Exchange Act against Defendant Sharp

"Section 10(b) of the Securities Exchange Act of 1934 forbids (1) the use or employ[ment] . . . of any . . . deceptive device, (2) in connection with the purchase or sale of any security, and (3) in contravention of" Securities and Exchange Commission rules and regulations." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336,

341, 125 S. Ct. 1627, 1630-31 (2005). Additionally, "Rule 10b-5 forbids, among other things, the making of any "untrue statement of a material fact" or the omission of any material fact "necessary in order to make the statements made . . . not misleading." *Id*. at 1631. A claim under section 10(b) and Rule 10(b)-5 of the Exchange Act "has six elements: (i) a misrepresentation or omission of material fact; (ii) scienter; (iii) a connection with the purchase or sale of a security; (iv) reliance; (v) economic loss; and (vi) loss causation. *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 679 (3d Cir. 2023).

### 1.    *The SAC Does Not Identify Any Material Misrepresentation or Omission by Defendant Sharp*

None of the statements attributed to Sharp in the SAC constitute material misrepresentations. "To be actionable, of course, a statement must also be misleading." *Basic Inc. v. Levinson*, 485 U.S. 224, 239, fn. 17 (1988). "Puffery" or "generalized statements of optimism" are not actionable. *In re Mylan N.V. Sec. Litig.*, No. 2:20-cv-955-NR, 2023 U.S. Dist. LEXIS 88941, at *26 (W.D. Pa. May 18, 2023).

The SAC identifies only three statements made by Sharp relevant to Plaintiffs' section 10(b) and Rule 10(b)-5 claims. First, a statement allegedly made in a February 26, 2021, investor call that:

> *We received a number of comments about how some certain people would have wished that we had announced that we were doing to do this reverse split sooner. In other words, we should have told you a*

> *week ago or two weeks ago. I made the conscious decision that we were*
> *not going to tell you. I'll tell you why. It would've created mass panic.*
> *Some of you would've sold your stock, which is fine, but the problem is,*
> *with a mass panic, instead of selling your stock at a dollar, 90 cents, 80*
> *cents, 70 cents, you probably would've ended up selling, a lot of you,*
> *selling it for 40 cents. I don't want to sound like I'm your mother, but*
> *we saved a lot of you from yourselves here.*

(SAC ¶ 340). Second, an additional statement allegedly made on the same February

26 investor call that:

> *If you're worried about dilution, don't be. This is not your typical OTC*
> *stock. We believe these people are investors, not profit takers.*

(SAC ¶ 148). Third, a tweet dated April 18, 2021 stating:

> *If you think that 6 billion new $HMBL shares are going to suddenly*
> *appear in the O/S, then please . . . sell your shares.*

(SAC ¶ 149).

The First of the above statements cannot be construed as misleading. Sharp is

explaining his reasoning for waiting to disclose information about the alleged

"reverse-split" and opining on what would have happened if he did disclose that

information early on. Indeed, the SAC does not allege this statement was misleading

either.

The Second and Third statements are also not misleading. Both statements are

statements of opinion–not fact. Defendant Sharp is identifying that he did not believe

certain investors were profit takers or that there would be any dilution of shares.

Defendant Sharp even qualified these statements by advising investors to "sell [their]

12

shares" if they believed otherwise.

Further, the SAC does not adequately allege any material omission by Sharp. The securities laws do not require a defendant "provide the public with all material information." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1432 (3d Cir. 1997). "To impose liability for non-disclosure, a defendant must be under a duty to disclose the omitted information." *Winer Family Tr. v. Queen*, 503 F.3d 319, 329 (3d Cir. 2007); *see also Oran v. Stafford*, 226 F.3d 275, 285 (3d Cir. 2000) ["Even non-disclosure of material information will not give rise to liability under Rule 10b-5 unless the defendant had an affirmative duty to disclose that information."]; *Basic, Inc. v. Levinson*, 485 U.S. 224, 239 n.17, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988) ["Silence, absent a duty to

disclose, is not misleading under Rule 10b-5."].

> Moreover, it bears emphasis that § 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information. ***Disclosure is required under these provisions only when necessary "to make . . . statements made, in the light of the circumstances under which they were made, not misleading***. Even with respect to information that a reasonable investor might consider material, companies can control what they have to disclose under these provisions by controlling what they say to the market.

(*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44-45 (2011) (internal citations omitted) (emphasis added).

The SAC attributes only one omission to Defendant Sharp–that he intentionally did not disclose the Tesoro merger and the reverse-split to investors.

However, the SAC does not allege that Defendant Sharp had a duty to disclose this information. Further, the SAC does not identify any statements attributed to Sharp that would give rise to any duty to disclose on his part. Accordingly, the SAC fails to allege a material misrepresentation or omission on the part of Defendant Sharp, and the First and Third Cause of Action for violations of Section 10(b) and Rule 10(b)-5 of the Exchange Act fail.

While there are numerous other allegations in the SAC concerning other statements made by HUMBL and its principals, the SAC does not attribute any of these statements to Sharp. The SAC's allegations that simply reference "Defendants" or the "Individual Defendants" lack the requisite particularity to find a violation of 10(b) and 10(b)-5 against Defendant Sharp as an individual. *See Garfield*, *supra*, at 80 [allegations of fraud must identify "the who, what, when, where, and how"].

Finally, Defendant Sharp cannot be held liable for a violation of Section 10(b) and Rule 10(b)-5 simply by his involvement in the "scheme" alleged or general allegations of his providing assistant to other actors. "Aiding and abetting liability is authorized in actions brought by the SEC but not by private parties." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 162, 128 S. Ct. 761, 771 (2008). In proceeding against a "secondary actor", "the plaintiff must show the deceptive conduct was publicly attributed to that secondary actor." *In re DVI, Inc. Sec. Litig.*,

14

639 F.3d 623, 648 (3d Cir. 2011). "It is insufficient to show only that the deceptive conduct was publicly disclosed through other statements or conduct; the public must be made aware of the defendant's acts." *Id.*

Here, the SAC does not allege any material misrepresentation or omission against Defendant Sharp. Therefore, he cannot be liable under Section 10(b) or Rule 10(b)-5. His involvement in the overall "scheme" or rendering of assistance to primary violators is insufficient to confer individual liability. Accordingly, the First and Third Causes of Action must be dismissed.

> 2. *The SAC Does not Adequately Plead Scienter as to Defendant Sharp*

To plead scienter under the PSLRA, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). "It does not suffice that a reasonable factfinder plausibly could infer from the complaint's allegations the requisite state of mind." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 127 S. Ct. 2499, 2504 (2007). The required state of mind is one 'embracing [an] intent to deceive, manipulate, or defraud,' either knowingly or recklessly." *In re Hertz Glob. Holdings, Inc.*, 905 F.3d 106, 114 (3d Cir. 2018).

"A complaint adequately pleads a strong inference of scienter 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'"

*Transperfect Holdings, LLC v. Pincus*, No. 22-1477-RGA, 2023 U.S. Dist. LEXIS 161106, at *11 (D. Del. Sep. 12, 2023).

Here, the SAC utterly fails to plead scienter with the requisite particularity against Defendant Sharp. The only scienter allegations against Sharp are that he (1) personally benefitted from the sale of stock owned by a company called "Forwardly" that was allegedly under his control (SAC ¶ 189); and (2) told shareholders that he intentionally did not advise them of the "reverse-split" because he feared creating a panic (SAC ¶ 146). These allegations fall far short of establishing the intentional conduct or deliberate recklessness required to support a claim under Section 10(b) and Rule 10(b)-5. Accordingly, the First and Third Causes of action must be dismissed.

Further, Sharp is entitled to even greater protection because two of his statements referenced above were "forward-looking." The PSLRA contains a "safe harbor" provision which "applies to statements that are forward-looking as defined by the statute provided that they are (1) identified as such, and accompanied by meaningful cautionary statements; or (2) immaterial; or (3) made without actual knowledge that the statement was false or misleading." *In re Aetna Sec. Litig.*, 617 F.3d 272, 278-79 (3d Cir. 2010); 15 U.S.C. § 78u-5(c)(1)-(2). "Under the PSLRA, if the alleged misstatement or omission is a "forward-looking statement," the required level of scienter is "actual knowledge." *Matrixx Initiatives, Inc. v.*

*Siracusano*, 563 U.S. 27, 48, fn. 14 (2011).

There is absolutely nothing alleged in the SAC that shows "actual knowledge" of falsity in the statements allegedly made by Defendant Sharp. Accordingly, the First and Third Causes of Action must be dismissed.

### 3. The SAC Does not Adequately Plead Plaintiffs' Reliance on Any Alleged Misrepresentations Attributed to Defendant Sharp

The SAC does not identify any facts that adequately allege reliance <u>beyond what has already been stated in their FAC</u>. "Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 159 (2008); *see also Semerenko v. Cendant Corp.*, 223 F.3d 165, 178 (3d Cir. 2000) ("It is axiomatic that a private action for securities fraud must be dismissed when a plaintiff fails to plead that he or she reasonably and justifiably relied on an alleged misrepresentation."). "The traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he was aware of a company's statement and engaged in a relevant transaction—e.g., purchasing common stock—based on that specific misrepresentation." *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 810 (2011).

Here, the SAC alleges "Plaintiffs and other members of the Classes purchased or otherwise acquired HUMBL securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities, and/or

statements disseminated by Defendants, and were damaged thereby." (SAC ¶¶ 360-61). This Court has already ruled that this statement is not sufficient to plead direct reliance. Plaintiffs attempt to cure their defective FAC by additionally alleging "[Plaintiffs] purchased HUMBL common stock as well as unregistered BLOCK ETX securities in reliance on the alleged false and/or misleading statements and/or on the integrity of the market price and suffered investment losses as a result of Defendants conduct." (SAC ¶¶ 11-12). However, this is nothing more than a restatement of the same inappropriate legal conclusion without any further detail as to which statements Plaintiffs relied on, when Plaintiffs became aware of the statements, etc. Accordingly, the SAC fails to identify any facts as to reliance and the First and Third Causes of Action must be dismissed.

### D. The SAC Fails to State a Claim under Section 20(a) of the Exchange Act Against Defendant Sharp

Section 20(a) of the Exchange Act states:

> Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent a such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

"To state a § 20(a) claim, plaintiffs must plead both a primary and secondary violation." *Sheehan v. Little Switz*., 136 F. Supp. 2d 301, 315 (D. Del. 2001). "To

18

state a claim that the individual defendants were "controlling persons," plaintiffs must establish that: 1) the individual defendants had the power to control or influence the primary violators; and 2) the individual defendants were culpable participants in the illegal activity." *Id.* "To establish control person liability, plaintiffs must show that the defendants had actual power or influence over the allegedly controlled person. Actual control means the practical ability to direct the actions of the controlled person." *Id.*

First, the SAC fails to state a claim for a primary violation of Section 10(b). As described in greater detail above, Plaintiffs do not identify any specific misrepresentation or omission made with the requisite scienter under 10(b) nor does the SAC identify that any named Plaintiff was aware of, and relied on, such a misrepresentation or omission.

Second, the SAC does not assert that Defendant Sharp was a "control person" of HUMBL nor does it provide any factual allegations that would support the contention that Defendant Sharp as such. The SAC identifies Sharp previously served as an "advisor" the HUMBL and currently serves as Capital Markets Advisor. (SAC ¶ 189). Defendant Sharp is not an officer, director, or controlling shareholder of HUMBL. The SAC attempts to undermine this fact by generalizing that the Individual Defendants (referencing Sharp) were "officers and/or directors [of HUMBL]". (SAC ¶ 366). This is false. The SAC does not identify Defendant Sharp

19

at any time participated as a manager, officer or director of HUMBL. Indeed, Defendant Sharp is the only Individual Defendant that is not alleged to be an officer or director (or both) of HUMBL. (*See* SAC ¶¶ 15-19).

Based on the foregoing, the SAC fails to state a claim for control person liability under Section 20(a) of the Exchange Act. Accordingly, the Second Cause of Action must be dismissed.

### E.     The SAC Fails to State a Claim for Violations of Sections 5 and 12(a)(1) of the Securities Act Against Defendant Sharp

"Any person who… offers or sells a security in violation of section 5 [15 USCS § 77e]… shall be liable, subject to subsection (b), to the person purchasing such security from him…" 15 U.S.C.S. § 77l(a)(1). "This section is designed as a vehicle for a purchaser to claim against his immediate seller." *Collins v. Signetics Corp.*, 605 F.2d 110, 113 (3d Cir. 1979) (emphasis added). "[U]nless some special relationship exists between the issuer and the actual seller of the securities, such as control of the seller by the issuer, a purchaser not in privity with the issuer has no claim under § 12(2) against the issuer." *Id.* at 112.

The SAC does not allege that any Plaintiffs purchased securities directly from Defendant Sharp. The Fourth Cause of Action should be dismissed because the SAC does not allege that Sharp was an immediate seller, nor that he was in privity with the Plaintiffs.

The SAC attempts to circumvent the privity requirement by alternatively

alleging that Defendant Sharp "actively solicited" the sale of the securities at issue.

(SAC ¶388). However, the SAC does not sufficiently plead liability by reason of

solicitation.

> The person who gratuitously urges another to make a particular investment decision is not, in any meaningful sense, requesting value in exchange for his suggestion or seeking the value the titleholder will obtain in exchange for the ultimate sale. The language and purpose of § 12(1) suggest that liability extends only to the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner. If he had such a motivation, it is fair to say that the buyer "purchased" the security from him . . . .

*Pinter v. Dahl, 486* U.S. 622, 647, 100 L. Ed. 2d 658, 108 S. Ct. 2063 (1988). "The

purchaser must demonstrate direct and active participation in the solicitation ***of the***

***immediate sale*** to hold the issuer liable as a § 12(2) seller." *In re Westinghouse Sec.*

*Litig*., 90 F.3d 696, 716 (3d Cir. 1996) (emphasis added). Further, "persons who fail

to qualify as sellers under the *Pinter* standard may not be held liable under § 12(2)

on an aiding and abetting theory." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628,

637 (3d Cir. 1989).

The Fourth Cause of Action does not allege Defendant Sharp's "solicitation"

with any detail whatsoever. *See* SAC ¶382-390. Further, the preliminary allegations

in the SAC do not sufficiently allege solicitation of any sales between Defendant

Sharp and any Plaintiffs. As is identified in greater detail above, the SAC only

alleges that Defendant Sharp: (1) told investors that he did not disclose the "reverse-

split" to them, and (2) told investors not to worry about share dilution. Thus, the

SAC fails to allege any violation of Section 12(a) of the Securities Act against Defendant Sharp, and the Fourth Cause of Action must be dismissed.

## IV.    **CONCLUSION**

Defendant George Sharp respectfully requests that this Court dismiss the SAC in its entirety with prejudice as against Defendant Sharp.

Dated: May 15, 2025

*Of Counsel*

Gregory G. Brown
(*admitted pro hac vice*)
Mark M. Higuchi
(*admitted pro hac vice*)
BROWN & CHARBONNEAU, LLP
420 Exchange, Ste. 270
Irvine, CA 92602
Telephone: (714) 505-3000
Facsimile: (714) 505-3070
Email: octriallaw@gmail.com
      mhiguchi@bc-llp.com

Respectfully submitted,

   */s/ Carl D. Neff*
Carl D. Neff (No. 4895)
Maura L. Burke (No. 5313)
PIERSON FERDINAND LLP
112 S. French Street
Wilmington, DE 19801
Telephone: (302) 482-4244
Email: carl.neff@pierferd.com
      maura.burke@pierferd.com

*Attorneys for Defendant,*
*George Sharp*